# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | |
|---|---|
| BRIAN L. SPRUILL | CIVIL ACTION NO. 06-2373 |
| VS. | SECTION P |
| SUE HOLLIDAY, WARDEN | JUDGE MINALDI |
| | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* (28 U.S.C. §2254) filed on or about December 20, 2006 by *pro se* petitioner Brian L. Spruill. Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Claiborne Parish Detention Center, Homer, Louisiana where he is serving concurrent  sentences totaling 25 years imposed following his January 2003 convictions for armed robbery and conspiracy to commit armed robbery in the Thirtieth Judicial District Court, Vernon Parish.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.  For the following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

### *Statement of the Case*

Petitioner was convicted of armed robbery and conspiracy to commit armed robbery on January 16, 2003. On March 20, 2003 he was sentenced to serve concurrent sentences of ten and twenty-five years. [doc. 1-2, p. 7].

His motion to reconsider sentence was denied and he timely appealed to the Third Circuit

2

Court of Appeals where, through court-appointed appellate counsel, he argued a single claim of excessiveness of sentence. [doc. 1-1, paragraph 9; doc. 5-2, Exhibit 1]. On February 4, 2004 his sentence was affirmed in an unpublished opinion of the Third Circuit. See *State of Louisiana v. Brian Spruill*, 2003-01085 (La. App. 3 Cir. 2/4/2004), 866 So.2d 419 (Table). [See doc. 5-2, Exhibit 2].

On March 5, 2004 petitioner filed a Motion in the Louisiana Supreme Court seeking an extension of the deadline for filing an application for writ of *certiorari*. [doc. 5-2, Exhibit 3]. On March 29, 2004 the Supreme Court granted a 60-day extension. [doc. 5-2, Exhibit 3-A]. Nevertheless, petitioner claims that he "never sought relief from the La. Supreme Court in this matter, KA 03-01085. Petitioner wrote a letter asking for an extension, however, he failed to meet the dead line and was denied." [doc. 5-1, p. 2]. On September 24, 2004 his apparently incomplete and untimely writ application was denied without comment. *State of Louisiana v. Brian Spruill*, 2004-0796 (La. 9/24/2004), 882 So.2d 1168. [see also doc. 5-2, Exhibit 3-b].

Petitioner did not seek further direct review in the United States Supreme Court.

On August 18, 2004 petitioner filed an Application for Post-Conviction Relief in the Thirtieth Judicial District Court raising claims of ineffective assistance of counsel[1] and obstruction of justice.[2] [doc. 1-1, paragraph 11; doc. 1-2, p. 7; doc. 5-2, Exhibit 4]. His

---

[1] Petitioner claimed that his trial attorneys "...failed to impeach co-defendant F. Atwater's credibility adequately nor objected or requested to instruct jury of the contradictive [sic], inconsistent, and perjured testimonies given by co-def and other state witnesses. If done so, a reasonable fact-finder would not credit the witness's story." [doc. 5-2, Exhibit 4, pp. 24-25]

[2] Petitioner claimed, "On the fourth day, Jan. 16th, of the petitioner's trial, with knowledge, state counselor, Mr. Kramer and Lt. J.J. Miller both partook in a perjured testimony (Rec. pg. 120, 125)..." Petitioner also claimed that his co-defendant, Atwater, stated that the prosecutor "verbally threatened her with criminal prosecution if she did not testify in the foregoing matter..." [doc. 5-2, Exhibit 4]

3

application was denied by the trial court on August 19, 2004. [doc. 1-2, p. 7; doc. 5-3, Exhibit 5].[3]

On September 29, 2004 petitioner filed an application for supervisory writs in the Third Circuit Court of Appeals. This writ application was assigned Docket Number KH 04-01314. [doc. 5-3, Exhibit 6a]   Petitioner argued three claims for relief: (1) ineffective assistance of counsel based on counsel's failure to adequately impeach witness Atwater; (2) sufficiency of the evidence; and, (3) presentation of "contradictive [sic] and perjured testimonies." [doc. 5-3, Exhibit 6]  On January 19, 2005 the Third Circuit denied writs in an unpublished judgment which noted –

> Relator failed to show that defense counsel was ineffective, or how such alleged deficient performance affected the outcome of the trial. Relator further failed to establish that the State committed obstruction of justice. As for Relator's assignment of error alleging insufficient evidence, Relator did not raise the assignment before the trial court, therefore the assignment is not properly before this court and was not reviewed. Accordingly, Relator's writ of review is denied. *State of Louisiana v. Brian L. Spruill*, No. KH 04-01314 (La. App. 3 Cir. 1/19/2005). [doc. 5-3, Exhibit 7].

On February 24, 2005 petitioner mailed a writ application to the Louisiana Supreme Court. The pleading was received and filed in the Supreme Court on March 17, 2005 and assigned docket number 2005-KH-736. [doc. 1-2, p. 7; doc. 5-3, Exhibit 8].  Citing neither federal constitutional law nor jurisprudence, petitioner made the following arguments:

> (1) "Prisoner contends that the highlighted record shows the contradicting and perjured testimonies given by the state's key witnesses that went uncorrected or challenged by his counsel was detrimental to the outcome of his trial by allowing the jury to hear these statements without rebuttal/correction, the truth of the matter was not exposed."

---

[3] Petitioner  did not provide a copy of the Judgment denying relief; instead, he provided a copy of the Notice of Judgment dated August 20, 2004. [doc. 5-3, Exhibit 5]

(2) "Furthermore the constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact when viewing the evidence in the light most favorable to the prosecution. There was no physical supporting evidence that proved the prisoner's guilt beyond a reasonable doubt. Due to the insufficient evidence the prisoner's counsel should have filed the motion of post verdict judgment of acquittal on his behalf.  By allowing the above errors the opportunity to slip bye [sic], the prisoner contends that the unprofessionalism of his counsel was totally ineffective. In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Shapiro*, 431 So.2d 372 (1982); The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S.15:438." and,

(3) "Regarding the obstruction of justice claim, the prisoner contends that the highlighted record shows the leading question asked by the DA was never asked the previous day and it led Lt. J.J. Miller into a perjured testimony. The day (29th) that Lt. J.J. Miller allegedly heard co-def's taped interview statements that indicated Brian L. Spruill and the day (28th) she fingerprinted Hymes, which is supported by the printcard contradict one another... Also through co-def's F. Atwater confession she admitted to being threatened by the state with criminal charges for her testimony. Therefore prisoner's due process rights were violated and obstruction of justice was committed." [doc. 5-3, Exhibit 8a]

The Supreme Court denied writs without comment on January 27, 2006. *State of Louisiana ex rel. Brian Spruill v. State of Louisiana*, 2005-0736 (La. 1/27/2006), 922 So.2d 534.

Petitioner signed his federal *habeas corpus* petition on December 6, 2006 [doc. 1-1, p. 6; doc. 1-2, p. 10].  It was mailed to the court on December 18 [doc. 1-1, p. 8] and received and filed on December 20, 2006.

Petitioner argues a single claim for relief, "Denial of effective assistance of counsel."  In support of this claim he contends that counsel failed to (1) properly investigate; (2) prepare by interviewing; (3) impeach; and (4) call lay witnesses on behalf of the defendant. [doc. 1-2, p. 12].

In support of his claim that trial counsel was ineffective for failing to properly investigate

5

and prepare by interviewing, petitioner argues that he was arrested on January 11, 2002 by the Leesville Police Department. He remained incarcerated in the Vernon Parish Jail for a period of three months during which time he "never sat down to thoroughly discuss, neither the facts of the case nor the seriousness of the crime with his lawyers."  He claims that he was interviewed only once, for 15 minutes, on the day before trial commenced.   In support of his claim that counsel failed to call witnesses, petitioner alleged that his attorneys failed to investigate or subpoena witnesses, and failed to call  "alibi witnesses, character witnesses, nor the petitioner himself" to testify at trial. [doc. 1-2, pp. 8-9].

Finally, with regard to his claim that counsel failed to properly impeach the state's witnesses he alleged, "Petitioner contends during Co. Def. F. Atwater's cross-examination, in open court Co. Def. denied part of her criminal history/record by excluding a felony theft (see ex. C1, C2). The Co. Def.'s records were clearly visible and readily available for the attack of her credibility, however Petitioner's counselor(s) failed to capitalize." [doc. 1-2, p. 9]. He also claimed that counsel was ineffective for failing to rebut "inconsistent and contradictive [sic] statements" of co-defendant Atwater and Lt. J.J. Miller of the Leesville Police Department. [doc. 1-2, p. 9].

### *Law and Analysis*

### *1. Exhaustion of State Court Remedies*

28 U.S.C. §2254 states, in pertinent part:

(b)(1) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court <u>shall not be granted unless it appears that</u> (A) <u>the applicant has exhausted the remedies available in the courts of the State;</u> or (B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

*     *     *

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented. 28 U.S.C. § 2254.

This statute codified the jurisprudential rule of exhaustion which requires that state courts be given the initial opportunity to address and, if necessary, correct alleged deprivations of federal constitutional rights in state cases. *Castille v. Peoples*, 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989). This exhaustion doctrine serves "to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982). Federal and state courts are equally obliged to guard and protect rights secured by the Constitution, therefore, it would be inappropriate for a federal district court to upset a state court conviction without first giving the state court the opportunity to correct the alleged constitutional violation.

To have exhausted state remedies, a federal *habeas* petitioner must have fairly presented the substance of his federal constitutional claims to the state courts. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir.1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998). Exhaustion requires that any federal constitutional claim presented to the state courts be supported by the same factual allegations and legal theories upon which the petitioner bases his federal claims. *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

In addition, a federal *habeas* petitioner must fairly present his constitutional claim to the highest state court and in a procedurally correct manner. *Skelton v. Whitley*, 950 F.2d 1037, 1041 (5th Cir.), *cert. denied sub nom. Skelton v. Smith*, 506 U.S. 833, 113 S.Ct. 102, 121 L.Ed.2d 61

7

(1992); *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir.1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982), *cert. denied*, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983); *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir.1993) (The exhaustion requirement demands that an applicant "fairly apprise the highest court of his state of the federal rights which were allegedly violated" and to do so "in a procedurally correct manner.") In Louisiana, the highest state court is the Louisiana Supreme Court.   Therefore, in order to determine whether or not a habeas corpus petitioner has exhausted available state court remedies, the federal court need only compare his federal *habeas corpus* claims with the claims raised in the Louisiana Supreme Court.

In the instant *habeas corpus* petition, petitioner contends that counsel was ineffective because he failed to (1) properly investigate; (2) prepare by interviewing; (3) impeach; and (4) call lay witnesses on behalf of the defendant. [doc. 1-2, p. 12].  However, petitioner's Louisiana Supreme Court writ application did not allege counsel's failure to investigate, interview, or call witnesses to testify on petitioner's behalf as grounds in support of his ineffective assistance claim. [see doc. 5-3, Exhibit 8, paragraph 3].

Further, with respect to counsel's alleged failure to impeach co-defendant Felicia Atwater and Lt. Miller, petitioner's claim before the Louisiana Supreme Court did not fairly alert the Louisiana Court to the federal nature of his claim. Petitioner's four page handwritten pleading [doc. 5-3, Exhibit 8] made no specific  reference to "ineffective assistance of counsel" and cited no federal jurisprudence in support of his claim.  Instead, as shown above, petitioner asserted only the following:

Prisoner contends that the highlighted record shows the contradicting and perjured

8

testimonies given by the state's key witnesses that went uncorrected or challenged by his counsel was detrimental to the outcome of his trial by allowing the jury to hear these statements without rebuttal/correction, the truth of the matter was not exposed. Furthermore the constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact when viewing the evidence in the light most favorable to the prosecution. There was no physical supporting evidence that proved the prisoner's guilt beyond a reasonable doubt. Due to the insufficient evidence the prisoner's counsel should have filed the motion of post verdict judgment of acquittal on his behalf. By allowing the above errors the opportunity to slip bye [sic], the prisoner contends that the unprofessionalism of his counsel was totally ineffective. In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Shapiro*, 431 So.2d 372 (1982); The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S.15:438. Regarding the obstruction of justice claim, the prisoner contends that the highlighted record shows the leading question asked by the DA was never asked the previous day and it led Lt. J.J. Miller into a perjured testimony. The day (29th) that Lt. J.J. Miller allegedly heard co-def's taped interview statements that indicated Brian L. Spruill and the day (28th) she fingerprinted Hymes, which is supported by the printcard contradict one another... Also through co-def's F. Atwater confession she admitted to being threatened by the state with criminal charges for her testimony. Therefore prisoner's due process rights were violated and obstruction of justice was committed. [doc. 5-3, Exhibit 8a].

Admittedly in the paragraph preceding the forgoing, petitioner alleged, "the Appellate Court denied prisoner's writ without stating lawful reasons . . . the Appeal Court stated Relator failed to show that defense counsel was ineffective or how such alleged deficient performance affected the outcome of the trial." [*id.*] Nevertheless petitioner did not fully and completely articulate an ineffective assistance of counsel claim in his Supreme Court writ application and therefore, his current claim was not "fairly presented" to the Louisiana Supreme Court. See *Baldwin v. Reese*, 541 U.S. 27, 29-32, 124 S.Ct. 1347, 1349-51, 158 L.Ed.2d 64 (2004) (holding a petitioner failed to "fairly present" a claim of ineffective assistance by his state appellate counsel merely by labeling the performance of said counsel "ineffective," without accompanying that label with

either a reference to federal law or a citation to an opinion applying federal law to such a claim); see also *Wilder v. Cockrell*, 274 F.3d 235, 260 (5th Cir.2004)("A fleeting reference to the federal constitution, tacked onto the end of a lengthy, purely state-law evidentiary argument, does not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights."). To have "fairly presented" the Supreme Court with his federal Sixth Amendment claims, the petitioner must have reasonably alerted the Louisiana Supreme Court to the federal nature of his complaints of ineffective assistance.  *Baldwin v. Reese*, 541 U.S. at 29-33, 124 S.Ct. at 1349-51; *Wilder v. Cockrell*, 274 F.3d at 260.

A claim is "fairly presented" to the state courts if there has been, for example, (1) reliance on pertinent federal cases employing relevant constitutional analysis, see *Gartrell v. Lynaugh*, 833 F.2d 527, 529 (5th Cir.1987); *Williams v. Lord*, 996 F.2d 1481, 1483 (2d Cir.1993); (2) assertion of the claim in terms sufficiently particular as to "call to mind" a specific right protected by the Constitution, see *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231-33 (3d Cir.1992); or (3) allegations of a pattern of facts that is well within the mainstream of constitutional litigation, see *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 454 n. 8 (7th Cir.1984).

Again, in his Supreme Court application, petitioner did not rely on or cite <u>any</u> federal Constitutional or statutory provisions nor any Federal cases in support of his claim. Furthermore, in order to assert an ineffective assistance claim in "terms sufficiently particular as to 'call to mind'" the right to effective assistance, the petitioner would have to have alleged both that counsel's performance was deficient and that the deficiency caused prejudice sufficient to undermine confidence in the validity of the verdict.  See *Strickland v. Washington*, 466 U.S. 668,

104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Petitioner's writ application made no such allegation. Finally, petitioner did not allege a pattern of facts sufficient to invoke an ineffective assistance of counsel claim. On the contrary, petitioner complained only that as a result of the "unchallenged" evidence "the truth of the matter was not exposed." Such allegations were clearly insufficient to alert the Louisiana court to the federal nature of petitioner's claims.

In short, petitioner's ineffective assistance of counsel claims remain unexhausted.

### 2. "Technically Exhausted" and Procedurally Defaulted Claims

While petitioner's ineffective assistance of counsel claim appears not to have been properly exhausted, they could now be said to be "technically exhausted" since petitioner cannot now litigate those claims in the Louisiana courts.[4] Therefore, it is safe to conclude that state court remedies are no longer available. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 1570-71 n. 28, 71 L.Ed.2d 783 (1982); 28 U.S.C. §2254(c). Additionally, these "technically exhausted" claims are now considered to be "procedurally defaulted." Thus, petitioner's *habeas corpus* claims of ineffective assistance of counsel are subject to dismissal under the procedural

---

[4] Petitioner could not now raise these claims in the Louisiana Supreme Court. Supreme Court Rule X, §5(a) provides: "An application seeking to review a judgment of the court of appeal ... shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal... No extension of time therefor will be granted." (Emphasis supplied) Therefore, to the extent that any of these claims were raised in the district court or the court of appeals, the time limit for litigating these claims in the Louisiana Supreme Court has long expired.

Nor could petitioner commence the post-conviction process anew in the district court. La. C.Cr.P. art. 930.4(D) provides, "A successive application may be dismissed if it fails to raise a new or different claim." Finally, a second application for post-conviction relief would be time-barred by the provisions of LSA C.Cr.P. art. 930.8 which provides a two year period of limitation for the filing of such applications; the two year period is reckoned generally from the date upon which the judgment of conviction became final under Louisiana law. Petitioner's judgment of conviction became final under Louisiana law at the latest, on September 24, 2004 when the Louisiana Supreme Court denied writs (*State of Louisiana v. Brian Spruill*, 2004-0796 (La. 9/24/2004), 882 So.2d 1168) on direct review. See La. C.Cr.P. art. 922(D).

default doctrine.

The procedural default doctrine bars federal *habeas corpus* review when a state court declines to address a petitioner's federal claims because the petitioner has failed to follow a state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991). "[I]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal *habeas* review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750-51. This doctrine ensures that federal courts give proper respect to state procedural rules. *Id.*

It is clear that petitioner's ineffective assistance of counsel claims remain unexhausted. It is also reasonable to conclude that petitioner is now unable to pursue these claims in the courts of Louisiana.  Therefore, these claims have been, for all practical purposes, procedurally defaulted. See *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir.1993), (cited with approval in *Sones v. Hargett*, 61 F3d 410, 416 (5th Cir. 1995)), ("[I]f it  is obvious that the unexhausted claim would be procedurally barred in state court, we will forego the needless 'judicial ping- pong' and hold the claim procedurally barred from *habeas* review").

In short, petitioner's habeas claims are "technically exhausted" but now procedurally defaulted.

### 3. Cause and Prejudice or Actual Innocence

The procedural default bar may be overcome by demonstrating either cause and prejudice for the default or that a fundamental miscarriage of justice would result from the court's refusal

12

to consider the claim. *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Coleman*, 501 U.S. at 750 (quoting, *Wainwright v. Sykes*, 433 U.S. 74, 84, 97 S.Ct 2497, 2505, 53 L.Ed. 2d 594 (1972)).

In order for a *habeas* petitioner to avoid a procedural bar by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 478. *Corwin v. Johnson*, 150 F.3d 467, 473 (5th Cir. 1998); *Glover v. Cain*, 128 F.3d 900, 904 (5th Cir. 1997); *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995). In order to show that a failure to consider the claim will result in a "fundamental miscarriage of justice" the *habeas* petitioner must show, "... as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635 (5th Cir.1999) (citing *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995). To establish such actual innocence, petitioner must "support his allegations with new, reliable evidence that was not presented at trial and must show that it was 'more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Petitioner offers no such evidence of actual innocence.

In order for a *habeas* petitioner to avoid a procedural bar by showing cause and prejudice, the petitioner must show that "some objective factor <u>external to the defense</u>" prevented the petitioner from properly raising the claim in state court. *McClesky v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)(quoting, *Murray*, 477 U.S. at 488) (emphasis supplied). In this case, petitioner can only fault himself for the failure to fairly present the substance of his

federal ineffective assistance of counsel claim to the Louisiana Supreme Court.

Nevertheless, even if petitioner could show cause for his default, "[i]n addition to cause, [a procedurally defaulted *habeas* petitioner] must show actual prejudice to overcome the procedural bar." *United States v. Guerra*, 94 F.3d 989, 994 (5th Cir.1996) (internal quotations omitted). "The movant makes this showing where he demonstrates that, but for the error, he might not have been convicted." *Id.* (emphasis supplied); See also *Pickney v. Cain,* 337 F.3d 542, 545 (5th Cir. 2003). Even if petitioner were to establish cause for his default, it appears unlikely that he could establish prejudice since he has provided no reason to suspect that the Supreme Court (or any court) would have ruled favorably on his defaulted claims.

In short, the *habeas corpus* claims presented herein were not properly exhausted because these claims were not fairly presented to the Louisiana Supreme Court. These claims, however, are now technically exhausted since petitioner cannot now litigate these claims in the courts of Louisiana. These technically exhausted claims are now procedurally defaulted. Since petitioner can show neither cause nor prejudice nor actual innocence, all three of these claims should be dismissed with prejudice as procedurally defaulted.

### 4. Rule 4 Considerations

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides that following examination of the pleadings by the court, "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." (See also *Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999), "The district court has the power under Rule 4 to examine and dismiss frivolous *habeas* petitions prior to any

14

answer or other pleading by the state. This power is rooted in 'the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.' 28 U.S.C. foll. § 2254 Rule 4 Advisory committee Notes.")

Petitioner's ineffective assistance of counsel claims are manifestly and clearly without merit. In order to prevail on these claims, petitioner must show, "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  With regard to the required showing of prejudice, *Strickland* mandates that the petitioner show, "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. 687.  Even if deficient performance is assumed in this case, petitioner cannot prevail because he has not made the requisite showing of prejudice.

With regard to his claims that counsel was ineffective for failing to properly investigate, prepare by interviewing, and calling lay witnesses, petitioner has provided only conclusory allegations concerning these claims.  Petitioner has not alleged what facts further investigation would have uncovered and how those facts would have positively influenced the outcome of his trial; nor has he provided the names of witnesses who were not called; nor has he alleged the nature or substance of the missing witnesses' testimony; nor has he demonstrated how this testimony would have positively influenced the outcome of his trial.  This bare assertion will not suffice. To succeed on an ineffective assistance of counsel claim, petitioner bears the burden of demonstrating that counsel's performance was deficient and that the deficient performance prejudiced his defense. Petitioner cannot escape this burden merely by stating his conclusions, since "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are

15

insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir.1998); see also *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.2000).

Petitioner has offered more than mere conlcusory allegations concerning his claim that counsel was ineffective when he failed to impeach the testimony of Ms. Atwood and Lt. Miller. However, on closer inspection, the evidence supplied by petitioner is simply insufficient.

Petitioner's first claim concerns the pre-trial statements and trial testimony of Felicia Atwood, an individual petitioner identifies throughout as a co-defendant. According to petitioner, in a statement given on January 15, 1998 Ms. Atwood identified an individual known to her as "Brian Barrow" as one of the perpetrators of the armed robbery in question. [doc. 1-2, p. 8; Exhibit A1 and A2] He then claims that Ms. Atwood recanted that statement in a January 16, 1998 statement wherein she stated that she thought that petitioner was Brian Barrow. [*id.*, Exhibits A3 and A4] He then points out that during her trial testimony, on cross-examination, "she admitted to knowing Brian Barrow from around town." [*id.*, pp. 8-9, Exhibits B1, B2]

Second, petitioner points out that Ms. Atwater, while being cross-examined, denied part of her criminal history by excluding a felony theft conviction. [id., p. 9] He claims counsel had access to her criminal record [Exhibits C1, C2] and was ineffective when he failed to attack her credibility on this issue.

Next, petitioner claims that Atwater and Leesville Police Lieutenant J.J. Miller gave inconsistent and contradictory statements during their trial testimony. Petitioner points out that Atwater initially testified that she saw Anthony Self with a gun; then, later she testified that she saw Self and petitioner armed with guns. [id., p. 10; Exhibits D1, D2] Petitioner faults counsel for his failure to "rebut" this testimony.

16

Finally, petitioner claims that Lt. J.J. Miller lied when she testified as to the date she heard co-defendant G. Hymes implicate the petitioner. [*id.*, p. 10; Exhibits E1, 2, 3; F, H1 and H2]

None of the examples cited by the petitioner demonstrate material or relevant discrepancies with regard to the testimony of the witnesses. Consequently, counsel's failure to object to or "rebut" the trial testimony of Ms. Atwater and Lt. Miller on these non-material issues does not amount to deficient performance as that term is defined by the jurisprudence.[5] As noted

---

[5] Petitioner makes much of Ms. Atwater's statements concerning a person identified by her as "Brian Barrow." In her January 15, 1998 statement to the police she stated that Barrow and Self entered the store and the Barrow struck one of the victims and this action angered Self and that Barrow and others shared the loot from the armed robbery. [doc. 1-3, Exhibit A 1-2] On the following day Ms. Atwater retrieved a high school yearbook and positively identified petitioner as the person she previously referred to as Brian Barrow and indicated that she had always known Spruill by the name "Barrow." [*id.*, Exhibit A 3-4]. Finally, in her trial testimony she testified that "Brian Barrow" was somebody from her home town and someone she knew. She then testified that the person she knew to be Barrow was Brian Spruill. [*id.*, B 1-2.] Further, in her testimony she positively identified the petitioner, Brian Spruill as one of the perpetrators of the armed robbery. [*id.*] Contrary to petitioner's assertions, there is no contradictory about this witness's statements.

Petitioner also suggests that Atwater was less than candid about her prior convictions. In her testimony she admitted to having been convicted of armed robbery and possession of cocaine. However, petitioner contends that she failed to admit her prior conviction for felony theft as shown by her "rap sheet." However, a review of the rap sheet does not fairly reflect that Ms. Atwater was ever convicted of the felony theft charge. Instead, the rap sheet indicates that the theft arrest was the basis of a probation revocation on some other unspecified charge. [id. C 1 and 2]

Petitioner also suggests a discrepancy in Atwater's testimony concerning whether or not petitioner was armed. [id., Exhibits D 1-2] However, a reading of the transcript excerpt provided by petitioner reveals that when asked about preparations for the robbery, she was specifically asked, "Did you see whether or not anybody had a gun?" and she replied that when they left co-defendant Hymes' trailer, only Hymes and Self were armed. Later she testified that when petitioner and Self fled the robbery scene, she observed that both were armed and she overheard Self chastise petitioner for striking one of the robbery victims with his gun. Despite petitioner's characterization of this testimony to the contrary, there is nothing inconsistent about Ms. Atwater's statements – either she did not see whether petitioner was armed when they left Hymes' trailer, or, petitioner armed himself after they left the trailer but before he perpetrated the robbery.

With regard to petitioner's concerns about alleged discrepancies concerning the dates of various statements and fingerprints, the record reveals that contrary to his assertions, his attorney did attempt to impeach the witness with these errors. Nevertheless, such minor discrepancies were clearly immaterial and insufficient to cast doubt on petitioner's guilt given the additional and overwhelming inculpatory evidence.

by the Fifth Circuit, "The proper standard for measuring counsel's performance under the first prong of *Strickland* [i.e. deficient performance] is reasonably effective assistance. That is, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.' *Strickland*, 466 U.S. at 687-88, 104 S.Ct. at 2064. Our scrutiny of counsel's performance must be 'highly deferential,' and we must make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' *Id.* at 689, 104 S.Ct. at 2065. Under *Strickland*, there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' *Id.*" *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994), *cert. denied*, Motley v. Scott, 513 U.S. 960, 115 S.Ct. 418, 130 L.Ed.2d 333.

Further, even if deficient performance were to be presumed, petitioner has failed to establish how counsel's failure to object or "rebut" to the witnesses' testimony amounted to prejudice sufficient to undermine confidence in the guilty verdict.  Again, as noted by the Fifth Circuit, "To satisfy the prejudice prong of *Strickland*, the 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' *Id.* at 694, 104 S.Ct. at 2068. The defendant need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  *Id.* at 693, 104 S.Ct. at 2068. But it is not enough, under *Strickland*, 'that the errors had some conceivable effect on the outcome of the proceeding.'  *Id.*" *Motley v. Collins*, 18 F.3d at 1226.

Other than the brief transcript excerpts, petitioner has provided scant additional information with respect to the totality of the evidence presented at this trial. However, some

facts may be gleaned from his appeal brief and the Third Circuit's unpublished opinion.

According to the former, petitioner's appellate counsel argued the following in mitigation "... the court found that the fact that the defendant used a gun, struck one of the victims with it; and assaulted multiple victims during the robbery of the grocery store, were all aggravating factors. (Rec. p. 224) The court found no mitigating factors despite the fact that two of the co-defendants who testified against the defendant each received only twelve years at hard labor for their involvement in this very crime. (Rec. pp. 412 & 430) Furthermore, the testimony of one of the co-defendants on page 371 of the record indicates that Anthony Self, who has never been apprehended for the armed robbery, was the mastermind of the whole scheme and that he badgered the defendant and others into accompanying him to the scene of the crime on the date that it occurred." [doc. 5-2, Exhibit 1 at p. 10] According to the recitation of facts by the Appeals Court,

> With three other conspirators, Brian Spruill robbed a grocery store on August 4, 1997. Felicia Atwater sat in the getaway car. Ganey Hymes stayed outside to act as a lookout, while the Defendant and Anthony Self, armed with handguns, entered the store.
>
> Once in, they threatened to kill the employees and instructed all but one to lie on the floor. They ordered the remaining employee to open the store's safe. During the robbery, the Defendant struck one employee with his gun, inflicting a one inch laceration to the back of his head. After taking more than seven thousand dollars in cash, the robbers fled. *State of Louisiana v. Brian Spruill*, 03-1085 (La. App. 3 Cir. 2/4/2004) (unpublished) at p. 1; [see also doc. 5-2, Exhibit 2, at p. 14]

Petitioner, with the benefit of hindsight, and, having now abundant time to comb the record, has done so and in his no-doubt meticulous reading of the entire record has discovered the above minor discrepancies in the testimony, statements, and reports of Ms. Atwater and Lt. Miller.

19

However, his claims of ineffective assistance of counsel based on these minor discrepancies are clearly and manifestly without merit.

Finally, this issue was addressed on the merits by the Third Circuit Court of Appeals. That court reviewed the record and determined that petitioner had neither established deficient performance nor prejudice. See *State of Louisiana v. Brian L. Spruill*, KH 04-1314 [doc. 5-3, Exhibit7] Since petitioner's ineffective assistance of counsel claim was adjudicated on the merits by the Third Circuit, his claims must be analyzed in accordance with the provisions of 28 U.S.C. §2254(d) which prohibits a federal court from granting an application for *habeas corpus* with respect to any claim that was adjudicated on the merits in state court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (1996). The state court's factual determinations are presumed correct; but can be rebutted by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

Unreasonable applications of clearly established Federal law occur when the state court, "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of petitioners case. *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (opinion of O'CONNOR, J.)). In other words, "the state court's decision must have been [not only] incorrect or erroneous [but] objectively unreasonable." *Wiggins v. Smith, supra*, at 520-521, 123 S.Ct. 2527 (quoting *Williams v. Taylor,*

*supra*, at 409, 120 S.Ct. 1495).  In making this determination, the federal court "... should ask whether the state court's application of clearly established federal law was objectively unreasonable..." [*id*.]  An unreasonable application of federal law is different from an incorrect application of federal law. [*id*.]

Thus, even if petitioner could demonstrate that the Louisiana decision was incorrect or erroneous, he cannot show that the decision was objectively unreasonable as those terms are defined by federal law.

**ACCORDINGLY,**

**IT IS RECOMMENDED** that the instant petition for *habeas corpus* be **DENIED AND DISMISSED WITH PREJUDICE** as technically exhausted but procedurally defaulted; and, in the alternative,

**IT IS RECOMMENDED** that the instant petition for writ of *habeas corpus* be **DENIED AND DISMISSED WITH PREJUDICE** pursuant to the provisions of Rule 4 of  the Rules Governing Section 2254 Cases in the United States District Courts.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P.**

21

6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

**THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, April 26, 2007.**

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE